UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE A. JONES,

                Plaintiff,         Civil Action No. 20-11566
                                          Honorable Paul D. Borman
v.                                    Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 15)

Plaintiff Maurice A. Jones ("Jones") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 14, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.    **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Jones is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED**, Jones' Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the

ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Jones was 53 years old at the time of his application date of March 8, 2018.[1] (PageID.82, 244).[2] At 5'8" tall, he weighed approximately 208 pounds during the relevant time period. (PageID.249). He did not complete high school, but earned his GED and trained as a certified nursing assistant. (PageID.83-84, 250). Previously, he worked off-and-on as a general laborer and performing assembly work, but he earned very little since 2000. (PageID.84, 150, 232). He now alleges disability primarily as a result of bipolar disorder, paranoid schizophrenia, arthritis, diabetes, and high blood pressure. (PageID.89-90, 92, 249).

After Jones' application for SSI was denied at the initial level on July 27, 2018 (PageID.130-34), he timely requested an administrative hearing, which was held on May 14, 2019, before ALJ Crystal White-Simmons (PageID.76-111). Jones, who was represented by attorney Kerry Spencer, testified at the hearing, as did vocational expert ("VE") Luann Castellana. (*Id.*). On May 23, 2019, the ALJ issued a written decision finding that Jones is not disabled under the Act. (PageID.58-71). On April 16, 2020, the Appeals Council denied review. (PageID.44-48). Jones timely filed for judicial review of

---

[1] Previously, Jones had applied for SSI, alleging disability beginning on January 4, 2013. On May 30, 2014, ALJ Gregory Holiday issued a written decision finding that Jones was not disabled under the Act because he was capable of a limited range of unskilled, light work. (ECF No. 11, PageID.209-16).

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 11.

the final decision on June 15, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Jones' medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Jones is not disabled under the Act. At Step One, the ALJ found that Jones has not engaged in substantial gainful activity since March 8, 2018 (the application date). (PageID.60). At Step Two, the ALJ found that he has the severe impairments of schizoaffective disorder, bipolar disorder, major depressive disorder, diabetes mellitus Type II, seizure disorder, and obesity. (PageID.61). At Step Three, the ALJ found that Jones' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Jones' residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional stooping; no use of moving machinery or unprotected heights; limited to work that is simple, routine, and unskilled; only brief and

superficial interaction with coworkers and the public; and only occasional supervision. (PageID.64).

At Step Four, the ALJ found that Jones is capable of performing his past relevant work as a produce sorter. (PageID.70). As a result, the ALJ concluded that Jones is not disabled under the Act. (*Id.*).

### C.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an

5

examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In his motion for summary judgment, Jones argues that the ALJ erred in: (1) failing to consider all of his impairments in combination, including his non-severe hand impairments; and (2) concluding that he could perform his past relevant work as a produce sorter, because that work allegedly was not performed at the substantial gainful activity ("SGA") level. (ECF No. 14, PageID.629-37). These arguments are addressed below.

    *1.    The ALJ Adequately Considered All of Jones' Impairments in Combination, Including His Non-Severe Hand Impairments*

At Step Two of the sequential analysis, the ALJ considered Jones' various hand

impairments – including arthritis of the left hand, history of a displaced fracture of the fifth metacarpal bone in the right hand ("boxer's fracture"), mild degenerative changes in the right radiocarpal joint, squirrel bite on the left index finger, and a laceration of the left second finger – and supportably found these impairments non-severe. (PageID.61) ("[T]he medical evidence of record does not demonstrate that any of these conditions [has] caused any significant functional limitations that have lasted or are expected to last twelve months or more as they have resolved, are controlled with medication or do not cause any symptoms.").[3] Jones fails to show any error in this determination – or to show that the ALJ should have found him more limited based on his hand impairments, even combined with his other impairments – as is his burden. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (claimant has the burden at Step Two); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant has the burden of demonstrating need for a more restrictive RFC).

      a.    The ALJ Supportably Found Jones' Hand Impairments Non-Severe

Jones first reported hand pain to his primary care doctor, Matthew Ott, D.O., on January 31, 2018. (PageID.360) ("Joint pain – has been having pain and swelling in his hands. Previously had a boxer's fracture in his right hand."). Dr. Ott did not record any abnormalities, but he ordered x-rays of Jones' hands and advised him to start taking Naproxen to help with pain. (PageID.362). At a follow-up visit on February 14, 2018, the

---

[3] The applicable Social Security regulations define a severe impairment as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities…." 20 C.F.R. § 416.920(c).

7

same complaint was noted, and it appears no x-rays had been taken. (PageID.356, 358).

A week later, Jones presented to the emergency room after punching a man who had tried to break into his home. (PageID.612). He was able to move his fingers and had no distal numbness, tingling, or weakness, but x-rays revealed a fracture of the distal fifth metacarpal (and possibly the base of the fourth metacarpal as well). (PageID.612-13). His hand was placed in a splint, he was given pain medication, and he was referred to hand surgery for follow-up. (PageID.613). Jones returned to the hospital one week later, having missed his appointment with the hand surgeon, and requesting additional pain medication. (PageID.608). There was some edema in the right hand, but he was able to move his wrist, thumb, and the fingers that were not splinted, and pulses and sensation were intact. (PageID.609). He was again given pain medication and antibiotics and advised to ice his hand and follow up with his primary care physician. (*Id.*).

In March 2018, Jones saw an orthopedic surgeon, who confirmed the fracture in his right hand and also diagnosed osteoarthritis in the left hand. (PageID.433-35). His right arm was placed in a finger-to-elbow cast. (*Id.*). Follow-up records from April 2018 reflect "routine healing" of the fracture. (PageID.430-31). Records from Dr. Ott simply confirm that Jones' hand was in a cast (in March 2018), and that he was being followed by a hand surgeon (in July 2018, August 2018, October 2018, and January 2019). (PageID.431, 478, 500, 503, 507). Dr. Ott did not record any relevant objective examination findings.

The record does not make clear exactly when Jones' cast was removed, but – contrary to his assertion – the records on which Jones relies do not reflect that his hand was still in a cast at his January 2019 visit with Dr. Ott, "nearly a year after his injury." (ECF

8

No. 14, PageID.631-32). Rather, the record Jones cites in support of this assertion (PageID.483) is, in fact, a copy of his *March 2018* visit notes – i.e., only *one month* after his injury. Similarly, Jones asserts that he was "instructed to 'Obtain x-rays of your hands and continue taking Naproxen to help with your hand pain.'" (ECF No. 14, PageID.632) (citing PageID.487). But, the note he cites for this proposition is from *February 2018*. And, contrary to Jones' contention that he reported "pain and swelling of the hands in January 2019, nearly a year after he sustained [a] fracture of his right hand[,]"(ECF No. 14, PageID.632), the note he cites in support of this assertion is from *February 2018.* (PageID.485-87). Finally, while Jones contends that he had "orthopedic surgery for his hand fracture" (ECF No. 14, PageID.631), the July 2018 note he cites is at best ambiguous as to whether he ever underwent any hand surgery. It simply notes that he was "seeing [a] hand surgeon," and "following with orthopedic surgery" for a boxer's fracture; it is unclear if the latter is a reference to a surgical procedure or merely a surgeon's office or department. (PageID.478). Moreover, the hand surgeon's records do not mention any surgery having taken place. (PageID.430-38).[4]

Given these facts, the ALJ supportably concluded that the record does not establish a severe hand impairment – notwithstanding the fact that the Step Two threshold "has been construed as a *de minimis* hurdle in the disability determination process." *Higgs*, 880 F.2d at 862. It remains Jones' burden to prove the severity of his impairments, and he has not

---

[4] The Commissioner's response brief noted these inaccuracies in Jones' argument. (ECF No. 15, PageID.649-50). Yet, Jones did not file a reply brief, and thus seems not to dispute the foregoing analysis of the record evidence.

done so here. *Id.* at 863. As several Sixth Circuit panels have concluded, "'[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment.'" *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (quoting *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001)); *see also Maloney v. Apfel*, No. 99-3081, 2000 WL 420700, at *2 (6th Cir. Apr. 14, 2000).

No such information is present in the record here. X-rays confirmed a fracture and osteoarthritis, but a diagnosis alone does not establish that an impairment is severe. *See Higgs*, 880 F.2d at 863. As set forth above, the limited objective findings in the record show that even immediately after his February 2018 injury, Jones was able to move the fingers on his right hand and did not have any distal numbness, tingling, or weakness. (PageID.612). There is no record of follow-up treatment with the hand surgeon after April 2018 (PageID.430), and Dr. Ott did not independently evaluate Jones' hands or record any relevant objective findings after Jones saw the hand surgeon. In short, there is simply too little objective evidence in the record to evaluate the intensity, frequency, and duration of Jones' hand pain, or to substantiate any particular manipulative limitations – much less any such limitations that had lasted or would last for at least 12 months. *See Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (to meet his Step Two burden, claimant must show that his impairment significantly limited his ability to do basic work activities *and* that he has an impairment that has lasted or is expected to last for a continuous 12-month period). The Court also notes that despite Jones' testimony that he cannot bend his

10

fingers, he admitted that he was receiving no treatment for his hands (and that medication "helps for a little bit"), and that the issues keeping him from working were "more mental" than physical. (PageID.89-93).

For all of the foregoing reasons, the ALJ's conclusion that Jones' hand impairments are non-severe is supported by substantial evidence.

### b. The ALJ Adequately Considered All of Jones' Impairments in Combination

Relatedly, Jones argues that the ALJ failed to consider his hand impairments in combination with his other impairments, regardless of whether she found them non-severe at Step Two. (ECF No. 14, PageID.632-33); *cf.* 20 C.F.R. § 416.923(c) ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). As set forth below, the ALJ's analysis throughout the decision satisfies this requirement.

For example, the ALJ stated at Step Three that she had considered whether Jones had an "impairment or combination of impairments" that met or equaled a listing. (PageID.61). Similarly, when addressing Jones' RFC, the ALJ stated that she had considered "the entire record" and later stated that she had assessed limitations based on Jones' "medically-documented" impairments, not just his severe ones. (PageID.64). This is sufficient. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) ("[T]he ALJ's statements that she had considered the entire record and all of [plaintiff's] symptoms suggest that she had considered [plaintiff's] impairments in combination.") (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

In addition, the ALJ specifically considered Jones' hearing testimony regarding his own perception of his manipulative limitations, i.e., chronic pain, difficulty lifting more than two or three pounds, and difficulty holding items. (PageID.65, 89-90, 98-100). The ALJ found this testimony not entirely consistent with the record, based, in part, on Jones' reported daily activities, which included riding the bus, shopping, doing laundry, doing dishes, and attending to his personal care needs – all of which require some use of the hands. (PageID.69, 83, 101-02, 267, 293, 439). This analysis – which Jones does not challenge – directly rebuts his assertion that the ALJ did "not address" his "allegations of pain in the joints and hands as well as bilateral hand dexterity." (ECF No. 14, PageID.633).[5]

In sum, Jones has not shown that any "residual problems" from his hand fracture or osteoarthritis (ECF No. 14, PageID.633) have (or should have) resulted in the imposition by a medical source of any greater limitations, nor has he identified what additional limitations the ALJ should have assessed. *See Turvey v. Comm'r of Soc. Sec.*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) (rejecting claimant's challenge to RFC assessment where he did not "specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from

---

[5] The ALJ also based the RFC, in part, on the assessment of the state agency physician, Dr. Thomas Flake. (PageID.69, 120-22). And, Dr. Flake specifically considered Jones' right hand fracture and left hand osteoarthritis before concluding that he could perform light work with no manipulative limitations." (PageID.116, 121). *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (ALJ adequately accounted for impairment by relying on opinion of state agency physician who considered it). Again, Jones does not challenge the ALJ's reliance on this opinion.

his pain or … impairments."). Therefore, the Court finds no error in this aspect of the ALJ's analysis.

### 2. The ALJ's Step Four Determination Is Supported by Substantial Evidence

Jones also argues that the ALJ erred at Step Four in concluding that he could perform his past relevant work as a produce sorter. (ECF No. 14, PageID.634-37). According to Jones, the ALJ should not have considered this job as past relevant work because it allegedly was "never performed at the SGA level." (*Id.*, PageID.634). However as set forth below, this argument is belied by Jones' own testimony and earnings records, and he did not object at the hearing when the ALJ classified this job as past relevant work. Thus, he fails to meet his burden to show error at Step Four. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (claimant bears the burden of proof at Step Four).

A claimant's prior work is considered "past relevant work" if it was performed within the past 15 years, lasted long enough for the claimant to learn to do it, and – as relevant here – rose to the level of SGA. 20 C.F.R. § 416.965(a). The Administration relies primarily on the claimant's earnings to demonstrate whether work activity was "substantial"; earnings above a certain threshold create a presumption of SGA. 20 C.F.R. § 416.974(a), (b). The relevant monthly thresholds in 2015 and 2016 – the years in which Jones worked as a produce sorter (PageID.84-86) – were $1,090 and $1,130, respectively. *See* https://www.ssa.gov/OACT/COLA/sga.html (last accessed April 30, 2021).

In his motion, Jones argues that, because he made a total of $1,773.20 in 2015, and $11,218.08 in 2016, his average monthly earnings (i.e., each total divided by 12 months)

13

amounted to $148 in 2015 and $935 in 2016 – both below the monthly thresholds. (ECF No. 14, PageID.635) (citing PageID.242). But, this argument misconstrues the relevant regulations and Jones' own testimony.

To begin with, the Administration does not automatically average a claimant's earnings over *an entire year*. *See* 20 C.F.R. § 416.974a. The regulations specify that the claimant's earnings will be averaged "over the *entire period of work*," not the entire year. 20 C.F.R. § 416.974a(a) (emphasis added); *see also Honeycutt v. Comm'r of Soc. Sec.*, No. 13-cv-151, 2014 WL 1232687, at *3 (W.D. Mich. Mar. 25, 2014) ("Earnings are 'averaged only over the months worked.'") (citing cases). Here, Jones testified that he worked for Staffline – the temporary staffing agency that placed him in the produce sorter position – for "maybe a month and a half," beginning in late 2015 and ending in 2016. (PageID.84-85). This is consistent with his earnings records, which indicate that he worked only one quarter in 2015 (PageID.236), and that his earnings from Staffline totaled $1,756.90 in 2015 and $1,707.23 in 2016 (PageID.240).[6] If the total documented earnings from Staffline ($3,464.13) are divided by the total number of months Jones reportedly worked there (1.5), the average monthly income over this "entire period of work" is $2,309.42 – well above the 2015 and 2016 monthly thresholds. *See* 20 C.F.R. § 416.974a(a). The Court notes that at the hearing, Jones' attorney expressly recognized this principle, albeit with respect to another job Jones held in 2016. Jones also worked at Best Buy that year, only for about one month. (PageID.88). Jones' attorney agreed that despite only working there a month,

---

[6] Jones received the remainder of his 2016 earnings from four other employers. (PageID.240).

14

assuming Jones made $5,400 from that work (as appears to be the case), that work "would be substantial [gainful activity]." (*Id.*).

Moreover, to the extent Jones had any concerns about whether the produce sorter job should be considered past relevant work, he had ample opportunity to raise them at the administrative hearing but failed to do so. When the ALJ first alerted Jones at the hearing that she intended to treat his produce sorting job ("the Inspector on the assembly line") as past relevant work, his attorney raised no objection. (PageID.89).

Jones' counsel had two other opportunities to object during the hearing. First, when the ALJ questioned the VE, she again expressly stated, "I am going to consider that [produce sorter job] as past relevant work," with the VE testifying that an individual with the RFC the ALJ ultimately adopted could perform it. (PageID.105). Yet, Jones' counsel did not object to the ALJ's determination or question to the VE. (*Id.*). In fact, just a few moments later, the ALJ explained why she was not including other work as past relevant work, and when the ALJ asked Jones' attorney if she agreed, his attorney concurred, stating, "So, we're good." (PageID.106-07). And, at the conclusion of the ALJ's questioning of the VE, the ALJ specifically asked Jones' counsel if she had any questions about that portion of the hearing, and Jones' attorney responded, "No, Your Honor." (PageID.110).

Jones' belated attempt to undermine the ALJ's reliance on the produce sorter job at this stage of the proceedings, based on an argument the ALJ never had the opportunity to consider, should be rejected. In support of this proposition, the Commissioner cited two cases, both of which are directly on point. (ECF No. 15, PageID.660) (citing *Mills v. Apfel*,

15

244 F.3d 1, 8 (1st Cir. 2001) (rejecting claimant's argument that prior job was not past relevant work because she performed it too briefly when she never presented it to the ALJ; reasoning: "If the ALJ had heard the objection now made and agreed with it, he could easily have considered" it and proceeded to step five) and *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 24 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.")). Despite the Commissioner's reliance on this case law, Jones did not file a reply brief, and thus has made no effort to explain why the Court should reach a different conclusion in this case. Moreover, this Court has recently had the opportunity to address a similar situation, in which the claimant's attorney failed to question or challenge the VE's conclusions about her past relevant work, or her ability to perform it under the hypothetical given, finding – as did the *Mills* and *Sims* courts – any argument on those issues waived. *See Sulier v. Saul*, No. 19-11078, 2020 WL 4516845, at *3 (E.D. Mich. July 17, 2020) ("Case law in the Sixth Circuit requires that objections to VE testimony, or to the characterization of a claimant's past relevant work at step four, must be made at the hearing or at some point before the ALJ's decision in order to be preserved for argument before the court.").

      For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED**, Jones' Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: April 30, 2021　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should

be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
